IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SCRIPPS COLLEGE,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>UR M. JADDOU, in her official capacity as Director, United States Citizenship and Immigration Services,<br><br>　　　　　　Defendant. | 4:23CV3075<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on cross-motions for summary judgment. Filing No. 16, Filing No. 17. At issue is whether the United States Citizenship and Immigration Services ("USCIS") properly denied Plaintiff's I-140 immigration petition by finding the beneficiary of the petition did not qualify for an employment-based first-preference visa as an "outstanding professor or researcher" pursuant to 8 U.S.C. § 1153(b)(1)(B). Plaintiff, Scripps College ("Scripps"), brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.

## BACKGROUND

Scripps sought to classify Julia Lum as an "outstanding professor or researcher" for an employment-based immigrant visa under 8 U.S.C. § 1153(b)(1)(B). Filing No. 16-2 at 2. This section provides outstanding professors or researchers will be classified as first-preference immigrants if:

　　(i)　　The alien is recognized internationally as outstanding in a specific academic area,
　　(ii)　　The alien has at least 3 years of experience in teaching or research in the academic area, and
　　(iii)　　The alien seeks to enter the United States---
　　　　(I)　　For a tenured position (or tenure-track position) within a university or institution of higher education to teach in the academic area,

1

(II) For a comparable position with a university or institution of higher education to conduct research in the area, or

(III) For a comparable position to conduct research in the area with a department, division, or institute of a private employer, if the department, division, or institute employs at least 3 persons full-time in research activities and has achieved documented accomplishments in an academic field.

8 U.S.C. § 1153(b)(1)(B).

Neither the statute nor the regulations define what it means to be "recognized internationally as outstanding in a specific academic area," but the applicable regulation states:

> A petition for an outstanding professor or researcher must be accompanied by:
>
> (i) Evidence that the professor or researcher is recognized internationally as outstanding in the academic field specified in the petition. Such evidence shall consist of at least two of the following:
>
> (A) Documentation of the alien's receipt of major prizes or awards for outstanding achievement in the academic field;
> (B) Documentation of the alien's membership in associations in the academic field which require outstanding achievements of their members;
> (C) Published material in professional publications written by others about the alien's work in the academic field. Such material shall include the title, date, and author of the material, and any necessary translation;
> (D) Evidence of the alien's participation, either individually or on a panel, as the judge of the work of others in the same or an allied academic field;
> (E) Evidence of the alien's original scientific or scholarly research contributions to the academic field; or
> (F) Evidence of the alien's authorship of scholarly books or articles (in scholarly journals with international circulation) in the academic field;
>
> (ii) If the standards in paragraph (i)(3)(i) of this section do not readily apply, the petitioner may submit comparable evidence to establish the beneficiary's eligibility.

8 C.F.R. § 204.5(i)(3)(i)–(ii).

2

A two-step review of the evidence submitted with an I-140 petition is required in determining whether a foreign national may be classified as an outstanding professor or researcher.  See *Kazarian v. U.S. Citizenship & Immigr. Servs.*, 596 F.3d 1115 (9th Cir. 2010).  "The first step of the evidentiary review is limited to determining whether the evidence submitted with the petition is comprised of at least two of the six regulatory criteria."  USCIS Policy Manual, Volume 6, Part F, Chapter 3, https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-3 (footnotes omitted).

> Meeting the minimum requirement by providing at least two types of initial evidence does not, in itself, establish that the beneficiary in fact meets the requirements for classification as an outstanding professor or researcher.  Officers also consider the quality of the evidence.  In the second step of the analysis in each case, officers should evaluate the evidence together when considering the petition in its entirety to make a final merits determination of whether or not the petitioner, by a preponderance of the evidence, has demonstrated that the beneficiary is recognized internationally as outstanding in a specific academic area.
>
> At this step, officers consider any potentially relevant evidence, even if such evidence does not fit one of the above regulatory criteria or was not presented as comparable evidence.  The officers consider all evidence in the totality. Some evidence may weigh more favorably on its own, while other evidence is more persuasive when viewed with other evidence.

*Id.*

The USCIS policy manual provides examples for consideration of the evidence submitted on the initial determination to analyze in the totality of the record for final merits recognition as internationally outstanding.  *Id.*  They include:

> The record demonstrates that the beneficiary has published articles in highly-ranked journals relative to other journals in the field, as demonstrated by, for example, evidence the petitioner provides regarding the journal's impact factor.
>
> The petitioner provides evidence demonstrating that the total rate of citations to the beneficiary's body of published work is high relative to others in the field, such as the beneficiary has a high h-index for the field. Depending on the field and the comparative data the petitioner provides, such evidence may indicate a beneficiary's high overall standing for the

3

> purpose of demonstrating that the beneficiary enjoys international recognition as outstanding;
>
> The petitioner documents the beneficiary's employment or research experience is with leading institutions in the field (such as U.S. universities that have been recognized as having high or very high research activity by the Carnegie Classification of Institutions of Higher Education …
>
> The record establishes that the beneficiary has received unsolicited invitations to speak or present research at nationally or internationally recognized conferences in the field.

*Id.*

> The manual further provides:
>
> In all cases, the petitioner must provide sufficient context regarding the above evidence and considerations to demonstrate that the evidence meets the relevant criteria and to establish the beneficiary's international recognition in the totality of the circumstances. This means that the petitioner must explain the significance of the submitted evidence, and how it demonstrates that the beneficiary is internationally recognized as outstanding.
>
> When requesting additional evidence or denying a petition, if the officer determines that the petitioner has failed to demonstrate eligibility, the officer should not merely make general assertions regarding this failure. Rather, the officer must articulate the specific reasons as to why the officer concludes that the petitioner, by a preponderance of the evidence, has not demonstrated that the beneficiary is an outstanding professor or researcher.

*Id.*

The record in this case shows Scripps is the women's college of The Claremont Colleges and is top ranked as a private, residential women's liberal arts college. Filing No. 16-2 at 2. Dr. Lum received her Ph.D. from Yale University, which is classified as an R1 institution for very high research activity, in 2018. *Id.*

In support of its petition seeking immigrant classification for Dr. Lum as an internationally recognized researcher or professor in the field of art history, Scripps submitted evidence that showed Dr. Lum is internationally recognized in the field of art

4

history particularly for her innovative "research on 19th Century colonial imagery of indigenous people in Australia, New Zealand, and Canada." *Id.* This evidence established:

> … b) Dr. Lum's work was published in prestigious journals in art history; c) her work was cited six times which was a high number for the low citation field of art history; d) leading institutions taught Dr. Lum's research, including the University of Toronto (Canada), University College London (United Kingdom), and University of Canterbury (New Zealand); e) experts in the field of art history recognized Dr. Lum as an outstanding researcher; f) Dr. Lum received multiple, unsolicited invitations to speak at conferences worldwide and prestigious universities, such as the Art Association of Australia and New Zealand and Harvard University; and g) Dr. Lum received more funding than usual relative to the field of humanities that was due, in part, to awards and prizes for her outstanding accomplishments and research.

*Id.* at 3.

"Nine experts from the field of art history submitted testimonial letters describing Dr. Lum's contributions to the field of art history, her outstanding reputation for research, and her international recognition." *Id.* The letters showed that although art history is a "low citation field," Dr. Lum's reputation as an outstanding international scholar is evidenced through art historians' and other scholarly lecturers' use of Dr. Lum's work to teach students at prestigious universities around the world. *Id.* One letter pointedly noted:

> Dr. Lum 'is one of the most significant art historians in the field today' based on 'landmark scholarship' in art history that is 'unique.' … Dr. Lum was 'widely credited for expanding the field of art history, pushing its scholarly boundaries, and introducing new ethical dimensions to what has long been a static discipline.' … Dr. Arabindan-Kesson testified that art history is a 'low citation' field,' and Dr. Lum's status in the field and importance of her work' was evident through art historians using Dr. Lum's work to teach students at prestigious universities around the world, including at Princeton University. . .. Dr. Arabindan-Kesson further recognized that Dr. Lum's international prestige was also evident through the 'hundreds of thousands of dollars in grant funding from the Canadian government,' which was 'extremely rare in the humanities, and especially in the art history field.' … Dr. Arabindan-Kesson also highlighted Dr. Lum's participation as a curator at art exhibitions in Canada which are 'significant marker[s] of one's impact in the field and a key marker of success in our discipline.' … Dr. Arabindan-

5

Kesson remarked on Dr. Lum's 'high publication record' in the 'field's leading journals, such as *British Art Studies, Journal 18,* and *Journal of Material Culture*." … Dr. Arabindan-Kesson explained that 'a single article can take 2-3 years to research, write, review and reach publication.'

*Id.* at 4.

Scripps submitted evidence that corroborated statements that were cited and identified in the nine testimonial letters. *Id.* at 6. Scripps provided an analytics report that established Dr. Lum's article, *The Invisible and Inalienable Wind* was in the "'top 20 most-read items (articles or features)'" in *British Art Studies. Id.*

Scripps showed Dr. Lum had received invitations to present her work at international conferences and universities, such as the Royal Society, London, … had served as peer reviewer for internationally circulated journals, exhibitions and at conferences, … and served as the chair or organizer for conferences in the field worldwide. … Scripps also submitted evidence of Dr. Lum's selection as a member of the editorial board at *Material Culture Review*, "'Canada's only scholarly journal dedicated to the study of material culture.'"

*Id.* at 7.

In the Notice of Intent to Deny ("NOID") issued on September 21, 2022, the USCIS found Scripps submitted evidence that satisfied three of the regulatory criteria for the first step of determining Dr. Lum's status as an outstanding professor or researcher in art history: 1) she participated as the judge of the work of others in the same or allied academic field of art history; 2) she made original scientific or scholarly research contributions to art history; and 3) she authored scholarly books or articles in scholarly journals with international circulation in art history. *Id.* at 7. USCIS disputed whether Dr. Lum was "recognized internationally as outstanding in the academic area of art history and "requested Scripps to submit additional evidence to show Dr. Lum's 'international recognition.'" *Id.* at 8.

Scripps responded in a memorandum that "identified the previous evidence submitted and emphasized specific, new evidence that contravened USCIS's initial finding that Dr. Lum was not internationally recognized as an outstanding researcher." Id. The new evidence showed that Dr. Lum was one of six applicants selected from 126 applications for the Getty Research Institute fellowship supporting her research project, "*A Traveling Art: Cross-Cultural Landscapes of the Pacific 1788 – 1848.*" Id. at 9.

"Scripps highlighted new evidence showing that Dr. Lum's level of funding was highly unusual relative to others in the field." Id. The new evidence showed that compared to the National Endowment of the Arts in the United States of $100,000 to an individual, Dr. Lum received over twice that amount in 2018. Id. "In 2018, the median amount for arts and culture grants was $28,150 and for all foundation grants was $35,000 [which was] well below the funding Dr. Lum received." Id.

Although the USCIS found Scripps submitted evidence that Dr. Lum has served as a reviewer of the work of others in the field of art history, that Dr. Lum's research has contributed to the academic field of art history, and that Dr. Lum has published scholarly articles, it found the evidence did not show Dr. Lum's work has impacted the field of art history to an extent which shows "that she is internationally recognized as an outstanding researcher." Filing No. 15 at 4. Throughout the final merits analysis, the USCIS repeatedly stated the evidence presented by Scripps was insufficient to establish Dr. Lum is recognized internationally as outstanding; however, it never stated what was required to establish international recognition as an outstanding professor or researcher. Filing No. 15.

The denial of Scripps's petition in the final merits determination focused on the number of times Dr. Lum's work had been cited, finding the evidence submitted by Scripps

7

"did not demonstrate that scholars have referenced [Dr. Lum's] work to an extent that would establish international recognition as outstanding in the field." Filing No. 15 at 3. Although USCIS acknowledged that Dr. Lum has received funding in support of her research, it found "the record does not support that [Dr. Lum] has received funding in excess of other researchers, nor does it show that she received her funding in recognition of her outstanding achievements." Id. at 6. The USCIS noted the letters supporting Dr. Lum were flattering, and they provided specific examples that Dr. Lum's work is being used; however, they do not establish that Dr. Lum's "work is being used or cited to an extent that shows distinction", and "[w]hile these letters show that the beneficiary has achieved some recognition, the record does not show that the beneficiary has garnered a widespread reputation as an internationally recognized researcher or professor." Id. at 7–8.

In concluding Scripps did not establish by a preponderance of the evidence that Dr. Lum is an outstanding professor or researcher, the USCIS denied the I-140 petition stating:

> The record shows that the beneficiary meets the plain language of three regulatory criteria, but it does not show that she is strong in any of them. You have proven that the beneficiary is a promising and respected researcher who has secured some degree of recognition for her work, but the record stops short of elevating her to the level of one who is recognized internationally as outstanding in the academic field.

Id. at 9.

## STANDARD OF REVIEW

In a case under the APA, "summary judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.'" *Friends of Animals v. Ross*, 396 F. Supp. 3d 1 (D.D.C. 2019) (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d

8

76, 90 (D.D.C. 2006)). When conducting a review under the APA, the district court 'sits as an appellate tribunal' and the 'entire case on review is a question of law.' *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

Agency action is required to be upheld on review unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). An agency decision is arbitrary and capricious if "the agency acted outside 'the bounds of reasoned decision making,'" *Russellville Legends LLC v. United States Army Corps of Engineers*, 24 F.4th 1192, 1196 (8th Cir. 2022) (quoting *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019)), "relied on factors which Congress has not intended it to consider," provided an explanation "that runs counter to the evidence," or makes a decision that is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Bettor Racing, Inc. v. Nat'l Indian Gaming Comm'n*, 812 F.3d 648, 651 (8th Cir. 2016) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## DISCUSSION

Scripps argues that the USCIS's denial of its I-140 petition must be reversed because it made internally inconsistent findings, imposed novel evidentiary requirements, disregarded relevant factors, and is not supported by substantial evidence. Filing No. 16-1 at 19. USCIS argues it properly considered the relevant criteria, and reasonably determined the evidence submitted by Scripps failed to support its petition. Filing No. 17. As explained below, the Court concludes that USCIS's decision was arbitrary and capricious, an abuse of discretion, and contrary to the law; therefore, the Court grants Scripps's motion for summary judgment and denies USCIS's motion for summary judgment.

Scripps contends that USCIS's decision was arbitrary and capricious because of the inconsistent findings made in the denial, the novel evidentiary requirements cited as support for the decision, and the disregarding of relevant factors specified in the regulations which culminate in a decision that is not supported by substantial evidence. Filing No. 16-1 at 19. The propriety of the USCIS's action must be judged solely by the grounds asserted by the agency. See *MRC Energy Co. v. U.S. Citizenship & Immigr. Servs.*, No. 3:19-CV-2003-K, 2021 WL 1209188, at *11 (N.D. Tex. Mar. 31, 2021) (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

USCIS's denial was decided on inconsistent findings from the evidence. The decision initially stated Scripps presented "strong" evidence to meet the "judge of others" criteria at 8 C.F.R. § 204.5(i)(3)(i)(D), because Dr. Lum "served as the Exhibition Review Editor for Material Culture Review as organizer and chair for several conferences, and chaired a panel;" but later found Dr. Lum "meets the plain language of three regulatory criteria, but it does not show that she is strong in any of therm. Filing No. 15 at 6. USCIS admits that this finding is inconsistent; however, it argues a single inconsistent finding does not undermine the validity of the decision in its entirety. Filing No. 18 at 27.

The USCIS's admitted inconsistent finding is not the only contrary finding in its decision. Citing to Dr. Lum's "role as conference presenter and lecturer," and "publication and citation record," USCIS found the evidence demonstrated that Dr. Lum's research contributed to the academic field in satisfaction of the criteria at 8 C.F.R. § 204.5(i)(3)(i)(E) for the initial step of its analysis. Filing No. 15 at 2. The USCIS went on to find in the second step of its analysis that Dr. Lum's participation in the aforementioned events "did not necessarily equate to original contributions to the academic field as there was no documentary evidence showing that the beneficiary's work disseminated at various

10

conferences had been extensively cited or used by others in the field." *Id.* at 5. USCIS did not explain how the evidence of Dr. Lum's role as a conference presenter and lecturer and her publication and citation record did not amount to original contributions to the field of art history. Furthermore, the USCIS's finding no documentary evidence showing Dr. Lum's work that was disseminated at various conferences had been extensively cited or used is controverted by the evidence Scripps presented of Dr. Lum's presentations on British Art History, and her article, *The Invisible and Inalienable Wind,* which was in the top 20 most read items in *British Art Studies*. Filing No. 16-2 at 5.

The unexplained internal inconsistencies reflect that USCIS failed to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Berardo v. United States Citizenship & Immigr. Servs.*, No. 3:19-CV-01796-SB, 2020 WL 6161459, at *3 (D. Or. Oct. 20, 2020) (quoting *Motor Vehicle Mfrs. Ass'n*, at 42–43 (1983). Consequently, the USCIS decision is arbitrary and capricious. *See id.*

In addition to the internal inconsistent findings, the USCIS decision imposed novel evidentiary requirements in its denial of Scripps's I-140 petition. "It is well-established that USCIS 'may not unilaterally impose a novel evidentiary requirement.'" *MRC Energy Company*, 2021 WL 1209188, (quoting *Kazarian*, at 1121–22).

The USCIS found Scripps failed to show that Dr. Lum's "work is being taught at more institutions than any other scholar's works. As such, this does not demonstrate that the beneficiary's impact on the academic field exceeds that of any other researcher." Filing No. 15 at 5. While USCIS acknowledged that Dr. Lum has received funding in support of her research, it found "the record does not support that [Dr. Lum] has received

11

funding in excess of other researchers, nor does it show that she received her funding in recognition of her outstanding achievements." *Id.* at 6.

These findings are not supported by the record, and the regulations and policy manual do not require the petitioner to show the beneficiary's contributions must exceed that of other researchers or professors in the field. Because the USCIS imposed novel evidentiary requirements in denying Scripps's petition, its decision is arbitrary and capricious and must be reversed.

The inconsistent internal findings in the USCIS decision and the imposition of novel evidentiary requirements amount to an explanation that runs counter to the evidence in the record, which does not support the USCIS's determination that Scripps did not establish by a preponderance of the evidence that Dr. Lum is recognized internationally as outstanding in the field of art history. The evidence presented in support of Scripps's petition included nine letters from prominent experts in the field of art history. Filing No. 16-2 at 3. The experts were from three continents and uniformly agreed that Dr. Lum is internationally recognized as an outstanding researcher in her field. *Id.*

The experts provided evidence of Dr. Lum's original contributions, citations relative to the field of art history, high level of grant funds relative to others in the field, the importance of Dr. Lum's original contributions and publications in prestigious journals, invitations (solicited as well as unsolicited) to present and attend conferences, and reliance on Dr. Lum's work to teach students at the world's highest ranked institutions. Filing No. 16-2. Applying the evidence in the record to the regulatory criteria and the guidelines in the policy manual, compels a conclusion that Scripps established by a preponderance of the evidence that Dr. Lum qualifies for international recognition as an outstanding professor and researcher in the field of art history. USCIS's determination to

the contrary is not supported by the evidence contained in the record; therefore, it must be reversed.

Based on the foregoing discussion, the Court finds that USCIS's denial of Scripps I-140 petition was arbitrary and capricious, an abuse of discretion, and not in accordance with the law. Therefore,

IT IS ORDERED:

1. Scripps College's Motion for Summary Judgment (Filing No. 16) is granted.

2. The Cross Motion for Summary Judgment (Filing No. 17) filed by United States Citizenship and Immigration Services and Ur M. Jaddou is denied.

3. The Court remands this case for further proceedings consistent with the Memorandum and Order.

4. A separate judgment will issue.

Dated this 12th day of December, 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge